## ELIPHALET BAKER & others *vs.* MANUFACTURERS' INSURANCE COMPANY

Insurers of goods in the hold of a vessel against perils of the sea are liable for damage caused by sea water, shipped during extraordinary stress of weather; but not for damage from the ordinary dampness of the hold, though aggravated by the length of the voyage, and the variety of climate through which the ship has passed, in consequence of such stress of weather. And the burden of proof being upon the assured to prove a loss by a peril insured against, the insurers are not liable for damage to the goods, if it is left in doubt whether it was caused by such ordinary dampness of the hold, or by an extraordinary formation of steam and gases, arising from an extraordinary access of sea water, occasioned by winds and seas and stress of weather.

ASSUMPSIT on a policy of insurance against perils of the sea and other usual perils upon merchandise, consisting of delicate French goods, in the ship Moselle, from Havre to Boston. The declaration alleged that the Moselle upon the voyage " encountered various storms and tempests of long continuance, by reason of which, and by the violence of the winds and waves, and by the perils of the seas, the said goods were wetted, damaged, spoiled and rendered useless to the plaintiffs." Trial at March term 1848, before *Wilde*, J., who reserved the case for the full court upon a report, which, after stating the cause of action, proceeded thus :

" The goods belonging to the plaintiffs were examined by an appraiser agreed upon by both parties, and were valued at $48,134.57, and the damage sustained upon them was estimated at $8,939.24, for $3,343.28 of which the defendants were liable under their policy, provided this loss arose from a peril insured against. The defendants at the trial admitted their liability to pay $1,096.90 ; that being the amount of the damage upon all the cases of goods which their examining agents reported to have been wet with salt water.

" The depositions of Abraham Somerby, the captain, and of Merrill Sewall, the chief officer, together with the logbook kept by him, which was introduced at the trial before the jury and used as evidence by agreement of parties, are in the case and to be referred to by either party." By these it appeared that the Moselle sailed from Havre on the 31st of December 1845, and

arrived in Boston after an extraordinarily long passage of eighty-eight days, and meeting with repeated gales and stormy weather which drove the ship south of the usual course, and caused her to ship heavy seas, and to strain and open her seams, but that she was a tight ship and did not leak much.

The report contained a detailed statement of all the evidence introduced by both parties, much of which consisted of the testimony of the appraisers who examined the goods upon the warrant of the collector of the port immediately after arrival. They testified to the number of packages damaged; that the damage was greater than in any similar cargo which they had ever examined; that many of the cases showed they had been wet with salt water; and some that were dry outside appeared, when opened, to have been so wet; that some cases were damp in which there was no indication of salt water, and in some of these the goods were as much damaged as in those which appeared to have been wet; and that there appeared to be no difference in the nature of the damage, which consisted in discoloration and mould. Some of the witnesses could not fix how many of the cases, which they examined and found damaged goods in, had been wet with salt water.

" Judge Wilde, the presiding judge, instructed the jury as follows:

" It is of no consequence to argue that there was no water in the hold, for it is admitted that some cases are wet; and the defendants admit their liability for those cases. The only difficulty arises from the further claim of the plaintiff:

" 1st. Were more goods wet by salt water than these cases? It is for the jury to decide whether there were any more wet with salt water; and the burden is on the plaintiffs to prove it. If not satisfied, return the amount of damage by salt water to these cases.

" 2d. Consider whether there is anything beyond that wet with salt water. I consider it doubtful, because the plaintiff must show it was from sea peril; and as dampness is ordinary, and is aggravated by a long voyage, it does not appear whether all, or how much, is from peril of the seas. You will consider

how many of these boxes were wet; and though the goods were not all touched by salt water, yet you will allow for all in those cases as wet. The plaintiffs say, the goods must have been wet, from appearances; and if you are satisfied they were so, you will allow for them as wet.

" In the cases not wet with salt water, you will exclude all those kinds of goods which are liable to be injured by dampness, and all not injured by a peril of the sea. These ought to be deducted altogether, because the fact of damage is not enough, and if not wet with salt water, no cause from a peril appears. As to the cases not wet with salt water, I think no allowance is to be made for goods liable ordinarily to be injured by dampness, although the damage is extraordinary. I see no evidence that could ascribe the uncommon damage in this voyage to such cases, to any peril of the sea. I rule this upon this posture of the evidence. If the evidence showed different damage from what it does, and the voyage was an ordinary one, I might rule otherwise. Upon this evidence, I cannot rule differently.

" You will therefore find the amount of damage done by salt water, and the amount of damage which does not appear to have been done by salt water, and return them separately."

The jury returned a verdict for the plaintiffs, and assessed damages " on goods injured by salt water in the sum of $1,320.97," " and for further damages in the sum of $1,399.10."

" If the court, under the rulings in the case, are of opinion that judgment is to be entered on the first assessment of damages, or on both assessments, judgment is to be entered accordingly; otherwise, a new trial is to be ordered."

The case was argued before the full court at March term 1849, by *C. G. Loring & C. W. Loring*, for the plaintiffs, and *B. R. Curtis*, for the defendants. The following opinion was delivered in June 1849 by

SHAW, C. J. This is assumpsit on a policy of insurance on goods imported in ship Moselle from Havre to the United States. The vessel had a very long and boisterous passage, but did not spring a leak, or suffer any considerable injury to her hull. A large portion of the goods was damaged, being silks and other French goods of delicate fabric.

The jury were rightly instructed that the defendants as insurers were liable only for damage caused by the extraordinary perils of the sea; and that the damage arising from dampness of the hold of a vessel, and a protracted voyage, being the ordinary perils to which all goods imported were exposed, is not insured against, and cannot be recovered upon a policy on goods.

The evidence is detailed at considerable length, and thereupon the court instructed the jury.

1. The jury were instructed to find all damage to the goods, occasioned by being wet with salt water. The instruction assumed, and we think rightly, that if cases of goods in the hold of the vessel were found to have been actually wet with salt water, it was plenary evidence that salt water had by some means gained access to the hold of the vessel, and this might fairly be attributed to strains occasioned by the force of the winds and seas, by stress of weather, which is an extraordinary peril, and one against which the underwriters do insure.

2. But there is a large amount of damage proved to have been done to the goods, respecting which there is no direct proof to show whether it was occasioned by dampness or other ordinary cause, or by perils of the sea. Of these, the jury were directed to exclude those liable to be injured by ordinary dampness, because the fact of damage is not enough and no sufficient evidence from which to find that it was caused by a peril of the sea.

3. There would still be a class of cases, not shown to have been wet with salt water, and yet not liable to be so damaged as they were found to be by the ordinary dampness of a vessel's hold. In regard to these, the underwriters are not responsible for the damage, unless proved affirmatively to have been caused by perils of the sea; no other such perils being averred than access of salt water, by straining in heavy weather. But although the damage is proved by the actual condition in which goods were found, yet there is no satisfactory evidence to prove that this damage was caused by any peril of the sea. It must have had a cause, because it is found to exist. Now, if it were equally probable that it arose from the entrance of a large quan

tity of salt water, and by the ordinary dampness of a ship's hold, aggravated by a long voyage and a considerable change of latitude, the plaintiffs could not recover, because they have the burden of proving it to be from the former cause. But the evidence tends to show that, notwithstanding a long passage and stress of weather, the vessel leaked but little; the preponderance of evidence is against the fact that it was occasioned by an extraordinary peril of the sea, causing an unusual access of sea to the hold of the vessel.

> *Verdict to be entered for the damage caused by salt water, as returned by the jury, with interest; and the other sum returned by the jury disallowed.*

The plaintiffs moved for a further argument, which was granted and had before the full court; and at March term 1851 the following opinion was delivered by

SHAW, C. J. This cause came before the court at March term 1849; an opinion was delivered in June; but, in consequence of a motion of the plaintiffs' counsel, suggesting a misapprehension of the effect of the report, no judgment has been yet entered.

The counsel for the parties have again been before us, and stated their views; the counsel for the plaintiffs thinking that the court had mistaken the effect of the report, the questions of law intended to be presented by it, and the grounds on which they were submitted; and the counsel for the defendants controverting that view, and insisting that the report as understood by the court was intended to be so understood, and the questions to which the attention of the court was drawn were those intended to be raised.

The report is in rather an unusual form; and it has been stated that it was not made by the judge who tried the cause, but by the counsel; and perhaps is not as critically accurate as it might have been.

The directions of the judge are to be construed with reference to the case as disclosed after all the evidence was in, and in special reference to the posture of the case as thus presented

The goods were mostly, if not all, new French goods of delicate fabric and colors. They had been thoroughly examined, and the damage estimated by official appraisers and experts, and the results of all such examinations were before the jury in detail.

The underwriters being responsible only for damage caused by the perils of the sea, not by the ordinary risks to which goods are exposed in a sea voyage, but only to those occasioned by stress of weather or other extraordinary risk; this of course must depend on the facts disclosed by the evidence, affecting,

1. The actual state and condition in which the goods were found, when taken out of the ship.

2. The nature and character in regard to texture, material and color; whether they were liable in their nature to be damaged, as they were found damaged, by being long packed, without any extraordinary exposure to wet or damp; or not in their nature so liable.

3. The circumstances and condition in which they were placed on the passage, taking into consideration its length, the variety of climate and latitudes through which the ship passed in her passage, and her actual condition as to exposure to winds and seas, her leaking, and the other circumstances attending the voyage.

On this state of the case, we understand that the judge ruled,

1. That all cases which were found to be wet with sea water, which could only be caused by leaking, should be computed, whether admitted by the underwriters or not; the underwriters having admitted that some cases were so wet; but, as the plaintiffs contended that they had not admitted as many as were actually so damaged, the judge directed the jury unconditionally to find upon the evidence, and return the amount of such damage.

2. The judge directed, as to those goods which were found damaged, but which were of such a nature that they would have been liable to be so damaged by being closely packed and kept a long time, in a warehouse or elsewhere, there being no evidence but the fact of damage, and that being equivocal, and the burden of proof on the plaintiffs to prove a loss by peril of the sea, that the jury could find no damage.

Baker & others *v*. Manufacturers' Insurance Company.

**3.** As to the intermediate species of goods, those found damaged, that is, spotted and stained, being goods not in their nature susceptible of damages by being kept closely packed, the judge doubted whether it was attributable to a peril of the sea or not, *i. e.*, whether it was occasioned by the ordinary dampness of a vessel's hold during a long voyage and in a hot climate; or whether it was caused by an extraordinary formation of steam and gases, occasioned by an extraordinary access of sea water, occasioned by winds and seas and stress of weather. The jury therefore were instructed provisionally to return the amount of damages to such goods, not actually wet, but yet found damaged, subject to the opinion of the whole court on the question whether this was a damage by peril of the sea, for which underwriters were liable; and the evidence was reported to enable the court to judge, from the evidence, of the nature and character of the loss in question, and whether by the peril of the sea or not.

Under these instructions, the jury returned insurance for goods damaged by salt water; another sum for further damages. By this we understand goods of the last mentioned class. We are to presume that the jury followed the instruction in regard to goods susceptible in their nature of damage, and of course returned no damage on that ground; that direction was precise, explicit and unconditional, and, if incorrect, the plaintiffs had the benefit of the exception. *Former opinion confirmed.**

* The reason of the omission of this case in Cushing's Reports is thus stated in a memorandum indorsed by the chief justice upon his papers: "Nothing to report. The counsel differed as to the meaning of the report; and the case went off on its own peculiar circumstances, and would be of no value in determining any principle." But as the case has been elsewhere imperfectly reported, and the decision misunderstood, the above report has been made from the papers on file, and the opinions printed from the manuscripts of the chief justice. See 14 Law Reporter, 203; 1 Phil. Ins. §§ 1099, 1129; *Montague* v. *London Assurance Co.* 6 Exch. 451; *Rankin* v. *American Ins. Co.* 1 Hall, 622, 634; *Leftwich* v. *St. Louis Perpetual Ins. Co.* 5 Louisiana Ann. 706.